No. 17,453.

KIRKLAND *v.* BOARD OF PUBLIC WORKS OF THE CITY OF
INDIANAPOLIS ET AL.

MUNICIPAL CORPORATION. — *Sewer.* — *Street Improvement.* — *Assessment.* —The construction of a sewer under a street as part of a paving improvement, is within the authority to improve streets, conferred by a city charter upon the board of public works, although authority so conferred is limited by a provision that the cost of street improvements shall be estimated according to the whole length of the street, or so much thereof to be improved as is uniform in the extent and kind of the proposed improvement per running foot, and the cost of constructing drainage sewers as such is required to be assessed according to benefits to, or the area of, the lands affected, where the sewer is a necessary part of the street improvement, and is not to be used to drain the abutting property.

SAME. — *Street Improvement.* — *"Resident Freeholders."* — *Statute Construed.* —"Resident freeholders" within the meaning of a charter providing that after the confirmation of an original resolution for a street improvement, the same shall be conclusive on all persons, unless within ten days thereafter "two-thirds of all the resident freeholders upon the street" remonstrate against it, means resident freeholders upon the street, and not simply residents of the city, owning property on the street.

From the Marion Circuit Court.

*Miller, Winter & Elam,* for appellant.

*J. E. Scott,* for appellees.

HOWARD, C. J.—This was an action for injunction, arising under a construction of the city charter of the city of Indianapolis. The assignment of errors presents for consideration the correctness of the court's rulings in sustaining the several demurrers of appellees to the appellant's amended complaint.

From the complaint it appears that on the 11th day of May, 1894, the board of public works of the city of

Indianapolis adopted a resolution for the improvement of a part of West Washington street in said city, upon which appellant's real estate is situated, "by grading and curbing, and paving the roadway with brick on concrete foundation, and constructing drains or sewers and appurtenances thereto, according to the drawings and specifications set out in said resolution;" that notice of said resolution was duly given, that remonstrances thereto were heard, and that on the first day of June, 1894, said resolution was confirmed by said board; that thereafter, within ten days, "two-thirds of all the freeholders, residents in the city of Indianapolis, owning property on such part of said street so to be improved, remonstrated in writing against such improvement; that said board, in disregard of said remonstrance, did not refer said matter to the common council of said city, but advertised for bids to do said work, and on July 6, 1894, did let the same to the appellee, Daniel Foley, who is now proceeding with the same; that in the plans, specifications, notices and contract for said work, there is included, as a part of the same work, and under the same contract, the construction underneath the part of said street so to be improved, for its whole length, a drain or sewer for the pretended purpose of carrying off the surface water from said street, which may fall thereon or flow thereon from neighboring property and cross streets." Said drain or sewer is constructed of brick, is of varying size, from two to two and one-half feet in diameter, and is sunk from four to nine feet beneath the street, another drain pipe also, of smaller size, is placed under said street; that the additional cost of said improvement, caused by the construction of said drain or sewer, will be from twenty-

five to thirty per cent. of the entire cost; that
there is no provision in the statute for the con-
struction of a drain or sewer, such as that here provided
for; that whereas, the statutes provide that persons
assessed for the construction of sewers may use the same,
yet it is not permitted that the property-owners along
said improvement use the sewer herein provided for;
that there is no pretence that said drain is con-
structed under any of the provisions of the city charter,
touching drains or sewers of any kind, but it is claimed
by the board of public works of said city, and by the city
engineer, that the same may be, and is to be, and is being
constructed as an incident to, and·a part of the street
improvement; that is, as an incident to the paving of
said street with brick, and according to the plans and
specifications, and the declared purpose of said board of
public works, and of said city engineer, the entire ex-
pense of such sewer or drain, or whatever it may be
called, is to be charged upon and enforced as a lien
against the abutting property along the line of said
sewer, by the front foot, and not according to the super-
ficial area of said property," and not according to any
other method provided by the statute for paying the cost
of the construction of sewers.

It is finally claimed that the building of such drain
beneath the street as a part of such improvement, and
charging the cost to the property-owners by the front
foot, as in the case of street improvements, is without
warrant of law, and should therefore be enjoined.

By section 74 of the act of March 6, 1891, as amended
by the act of February 22, 1893, being the act for the
government of cities having a population of more than
one hundred thousand, and commonly known as the In-
dianapolis city charter (Acts 1891, 137; Acts 1893, 56;

R. S. 1894, section 3845), it is provided that the costs of street improvements shall be assessed against abutting lands and lots, per running front foot, without regard to benefits to or area of such lands or lots.

By sections 83, 88, of the city charter, it is provided that the costs of the construction of sewers shall be assessed in certain cases according to benefits to, and in others according to area of, lands affected.

It is evident, therefore, that under the statute it would not be lawful to assess the costs of a sewer upon the abutting lands and lots by the running front foot.

The principal question in this case then is whether the drain described in the complaint is a sewer, as contemplated in the statute, or whether it is a part of the street improvement.

By section 59 of the charter (section 3830, R. S. 1894), the board of public works is given very full powers over the streets, alleys, and public places of the city, among others, "to design, order, contract for, and execute the improvement or repair of any street, alley or public place within such city."

By section 73 of the charter (section 3844, R. S. 1894), it is provided that: "Whenever the board of public works shall order the improvement of any street, alley, sidewalk or other public place in such city, in whole or in part, it shall adopt a resolution to that effect, setting forth a description of the place to be improved, and full details, drawings and specifications for such work."

What the improvement shall be is not defined by the statute. That is plainly left to the discretion of the board. The only limitation is found in the succeeding section, that the cost shall be estimated according to the whole length of the street or alley, "or so much thereof to be improved as is uniform in the extent and kind of the proposed improvement," per running foot. Pro-

vided, then, the improvement is uniform in kind and extent, the board must say by resolution what that improvement shall be.

The end to be attained, however, namely, the better preparation of the street for public travel, must evidently determine the nature of the improvement to be made. The mere grading of the street may be deemed sufficient in some instances. Afterwards, it may be thought necessary to raise the center or road bed, and sink gutters along the sides, so as to make a dryer and firmer highway. If the travel increases, graveling may be thought needful. Finally, the board may be of opinion that the street has become so important a thoroughfare that it should be paved with brick or stone. If the ground were low and wet, it would seem that, in connection with any of these improvements, it might be necessary to draw the water from the street by gutters, drains or otherwise, as the board should judge best.

In this case, as stated in plaintiff's complaint, the board, by resolution, expressed its judgment to the effect that said street should be improved "by grading and curbing, and paving the roadway with brick on concrete foundation, and constructing drains or sewers and appurtenances thereto."

The uniformity of the whole work, as well as the particular purpose of the drain under the roadway are likewise shown in the complaint, where it is said: "In the plans, specifications, notices, and contract for the said work, there is included, as a part of the same work, and under the same contract, the construction underneath the part of said street so to be improved, for its whole length, a drain or sewer for the pretended purpose of carrying off the surface water from said street which may fall thereon or flow thereon from neighboring property and cross streets."

Certainly no purpose is here indicated but the improvement of the street. Indeed the complaint says elsewhere that the drain is not to be used as an ordinary sewer, no intersections or connections with house or other drains being permitted. It is therefore built exclusively for the improvement of the street, and not, except incidentally, as a sewer.

There can be no doubt that the board had power, under the charter, to make the improvement as provided for in the resolution. Indeed it would appear that the drainage of the street was a necessary part of the improvement. It may seem that it would have been better to have first constructed a sewer along the street, under the sewer provisions of the charter, and then lay the pavement under the provisions for street improvements; and doubtless this would be true generally. There is nothing shown, however, from which we may discover that the board abused its discretion in this case; and the course pursued, for aught that appears, may have been the wisest under the circumstances.

However that may be, it cannot be said that the draining of water from a street may not be a necessary part of the improvement of such street. And in this case, as we have seen, the board was of opinion that such drainage was necessary.

It has frequently been decided that a drain may be constructed in connection with other street improvements and as a part of the same. *Davies* v. *City of Saginaw*, 87 Mich. 439 ; *Murphy* v. *City of Peoria*, 119 Ill. 509 ; *Cone* v. *City of Hartford*, 28 Conn. 363 ; *Hastings* v. *Columbus*, 42 O. St. 585 ; *Bronson* v. *Borough*, 54 Conn. 513 ; 6 Am. and Eng. Ency. of Law, 19. See also, *Leeds* v. *City of Richmond*, 102 Ind. 372 ; 10 Am. and Eng. Ency. of Law, 282.

It is further contended that the board had no author-

Kirkland *v.* Board of Public Works of the City of Indianapolis *et al.*

ity to let the contract, for the reason that, in compliance with section 73 of the charter (section 3844, R. S. 1894), and within ten days after the confirmation of the resolution ordering the work done, "two-thirds of all the freeholders, residents in the city of Indianapolis, owning property on such part of said street so to be improved, remonstrated in writing against such improvement."

The words of the statute are, that after the confirmation of the original resolution, the same shall be conclusive on all persons, "unless within ten days thereafter, two-thirds of all the resident freeholders upon such street or alley remonstrate against such improvement."

Counsel for appellant argue that "resident freeholders" here means residents within the city and owning property upon the street; while counsel for appellees contend that the words mean what they seem to say, namely, resident freeholders upon the street. We think the latter to be the evident meaning and intent of the law.

After the adoption, but before the confirmation of the resolution, provision is made for notice to property owners and others interested in or affected by the work, and for the hearing of remonstrances from them. Sections 73, 63, of the charter, sections 3844, 3834, R. S. 1894.

After the confirmation of the resolution, ten days additional are allowed during which resident property-owners upon the street may make further remonstrance. We do not think that a second remonstrance was intended for all persons within the city who might own property upon the street. The right to a second remonstrance was rather a favor to those most particularly interested, namely, the resident freeholders upon the street.

The terms resident freeholders within, near to, along or upon a given place, are frequently used in this and

other statutes; and the meaning is usually limited to the locality so designated, unless some other signification is shown by the context.

In the statute for the opening and improvement of highways (sections 6742–6750, R. S. 1894; sections 5015–5023, R. S. 1881), similar provision is made in favor of freeholders residing along the line of the proposed improvement.

Other questions discussed by counsel need not, as we think, be considered. The injunction was properly referred.

The judgment is affirmed.