JOE SULLIVAN AND OTHERS v. JOINT
INDEPENDENT CONSOLIDATED SCHOOL DISTRICT
NO. 102, SWIFT AND CHIPPEWA COUNTIES.
IRA BEST AND OTHERS v. SAME.

88 N. W. (2d) 1.

January 31, 1958—Nos. 37,249, 37,250.

*Johanson, Winter & Lundquist* and *Richard A. Bodger,* for appellants.

*Lauerman & Johnson* and *Leo J. Lauerman,* for respondent.

KNUTSON, JUSTICE.

These are appeals from an order of the trial court denying a motion for amended findings of fact or a new trial in a proceeding for consolidation of several school districts.

On November 28, 1955, petitions were filed with the county superintendent of schools of Swift County for consolidation of School Districts Nos. 5, 32, 33, and 76 of Swift County and Nos. 10 and 38 of Chippewa County with Independent Consolidated School District No. 4 of Swift County. The proceeding was brought under M. S. A. 122.18 to 122.28. Statutory requirements preliminary to the filing of the petition under § 122.20 have not been attacked so they need not be stated herein. On the same day as the petitions were filed, the county superintendent of schools issued an order for election to be held on December 12. The petition covering District No. 5 of Swift County stated that there are 15 resident freeholders in the district. It was signed by 5 persons claiming to be resident freeholders. On December 3, 2 of such signers filed an unacknowledged written instrument purporting to withdraw their signatures, and on December 6 they filed a similar instrument which was acknowledged on December 5. The election was held and resulted in a vote favorable to consolidation. Independent Consolidated School District No. 4 approved the consolidation by a resolution of the school board, as required by law. The county superintendent thereupon issued her order pursuant to § 122.22 giving effect to such vote. Two separate appeals were taken to the district court from such order.

While the appeal was pending, a petition was filed with the county auditor of Chippewa County for the dissolution of District No. 10 of that county and for the attachment of the territory therein to another school district. The county board proceeded to dissolve the district and ordered a hearing on the petition to determine whether this territory should be attached to the district prayed for in the petition. Prior to the date of such hearing, the District Court of Chippewa County issued a temporary injunction restraining the members of the county board from proceeding with said matter pending a determination of the appeals from the order of consolidation.

The appeals were tried together in the district court, and the consolidation was upheld. Appeals thereafter were taken to this court from an order denying a motion for amended findings or a new trial. These appeals have been consolidated here, and, inasmuch as the issues presented are the same on both appeals, they will be disposed of together.

The facts relating to the issues determinative of the appeal will be stated more in detail hereafter. The statutory provisions most vitally involved in this matter are that part of § 122.20 which reads as follows:

"After approval by the commissioner of education of the plan for the formation of a consolidated school district, an election on consolidation shall be held upon presentation to the county superintendent of a petition or petitions asking for the formation of a consolidated school district in accordance with the plan approved by the commissioner of education, signed and acknowledged by at least 25 per cent of the resident freeholders of each school district all of the territory of which is included in the proposed consolidated school district and which district is maintaining only an ungraded elementary school or schools and of each portion of a school district so included which is taken from a school district which is maintaining only an ungraded elementary school or schools, who are qualified to vote at school meetings or elections and who have been such freeholders for at least 30 days immediately preceding the signing and acknowledging of the petition.

"If the territory of the proposed consolidated school district lies in two or more counties, the petition or petitions shall be presented to the county superintendent of the county in which the greater portion of

such proposed consolidated school district lies,"

and § 122.21, subd. 1, which reads:

"Upon an election becoming callable under the provisions of section 122.20, said county superintendent shall, within ten days thereafter, cause ten days posted notice to be given in each district, or portion of district, maintaining only ungraded elementary schools, which is included in the proposed consolidated district, and such notice shall be published once, at least ten days prior to the date of such meeting or election, in a newspaper, whether it be a legal newspaper or not, if there be one published in said proposed consolidated school district, of a special meeting or election to be held within the proposed consolidated school district at a time and place specified in such notice, to vote upon the question of consolidation."

Included within District No. 5 is a tract of land owned at one time by William Matthews consisting of the W1/2NW1/4, NE1/4 NW1/4, and lots 3 and 4, sec. 11, T. 121, R. 38. This land was conveyed by William Matthews and wife to his son, Edward Matthews, on March 3, 1902. Appellants contend that William Matthews also owned two small islands in a lake adjacent to the above land and that when he conveyed the above-described property to his son Edward he did not include the two islands. It is therefore claimed that, when William Matthews died in 1902, the title to these islands vested in his heirs. Edward Matthews died in 1924, leaving among his heirs three sons, John, Walter, and James, who are residents of District No. 5 but are not freeholders unless their undivided interest in these islands may be such as to furnish that requirement. Neither the estate of William Matthews nor that of his son Edward has ever been probated. The trial court was of the opinion that the evidence failed to establish that John, Walter, or James owned any interest in these islands. The only evidence showing that William Matthews ever owned these islands is a partial abstract introduced at the trial showing a deed from one James Egan and wife to William Matthews on October 28, 1891, in which the property is described as follows: "Conveys Two (2) Islands situate in adjoining Lake within the area of Sec. 11, Twp. 121, Rge. 38." The trial court stated in its memorandum that there is no evidence

that Egan ever owned the islands. We might add that, in addition to that conclusion, a description of the two islands in the deed attempting to convey them to William Matthews is so indefinite that it is doubtful whether title could be predicated upon that deed at all. Whether the islands are part of the land conveyed by William Matthews and his wife to Edward Matthews does not appear from the evidence. All that appears from the description is that they are located somewhere in "adjoining Lake within the area of Sec. 11." John, Walter, and James Matthews have never claimed title or any interest in these islands. At the time of the trial they disclaimed all interest therein. On the evidence before us, the trial court was clearly right in holding that it had not been established that they were freeholders in District No. 5.

■ Appellants contend that Rose Cannon, one of the petitioners in District No. 5, was mentally incompetent at the time she signed the petition and that, as a consequence, her name may not be counted in determining whether the required number of resident freeholders had signed the petition. There is some evidence that Mrs. Cannon was suffering from some emotional disorder, at least at the time of the trial. It appears that she had been given some shock treatments in a mental hospital at various times. The trial court was of the opinion, as shown by its memorandum, that the evidence did not establish mental incompetency at the time the petition was signed. We have carefully examined the record in this respect and are convinced that the trial court was right. Much of appellants' argument on this issue is based on assumptions unsupported by evidence.

Appellants complain that the court denied their request to have Mrs. Cannon examined by a neutral physician under Rule 35 of Rules of Civil Procedure. The court acted within its discretionary power under that rule. Even if a neutral physician were to find that Mrs. Cannon was mentally incompetent at the time of the trial, it would not follow that she had been mentally incompetent at the time the petition was signed. We find no abuse of discretion in the court's denial of the request to have Mrs. Cannon examined by a neutral physician at the time of the trial.

■ The petition for consolidation was filed on November 28, 1955. On the same day, the county superintendent of schools approved the

petition and ordered an election to be held on December 12, 1955. On December 3 two of the signers of the petition in District No. 5 filed unacknowledged written instruments requesting the withdrawal of their names from the petition. On December 6 they filed similar instruments acknowledged on December 5. It is conceded that, if they are permitted to withdraw, the petition would not contain the requisite number of signers. Appellants contend that those signing the petition should be permitted to withdraw at any time prior to the election. This question has already been determined adversely to appellants' contentions in In re Dissolution of School Dist. No. 33, 239 Minn. 439, 60 N. W. (2d) 60, where we held that it is too late to withdraw once the county board has acted on a petition for dissolution under § 122.28. No good reason exists for adopting a different rule in a proceeding for consolidation under the sections here involved. We therefore hold that, when the county superintendent has acted upon the petition, it is too late to withdraw.

Appellants further assert that it is manifest from the fact that the order for election was issued on the same day as the petitions were filed that respondent fraudulently conspired to prevent signers from withdrawing their names from the petition. There is no evidence to support a claim of either fraud or conspiracy. If anyone committed a fraud, it must have been the county superintendent of schools since the duty rests on her to issue the order for election. The statute does not contemplate a waiting period to permit signers to change their minds. It requires the county superintendent to act within a period of ten days after the petition is filed. The best that can be said here is that the county superintendent of schools proceeded expeditiously in compliance with the statute. Fraud cannot be imputed to public officials by a mere assertion without proof of any kind.

■ There are four persons who reside in District No. 5 who own no land in the district but do own land in other parts of the state. Appellants contend that they are "resident freeholders" within the meaning of § 122.20, which requires that a petition for consolidation be signed by 25 percent of the "resident freeholders of each school district" included in the proposed consolidation. The language used by the legislature does not permit such construction. Obviously, the legis-

lature saw fit to impose two requirements on petitioners, (1) that they be a resident of the school district, and (2) that they be a freeholder of the school district. It would be as logical to argue that residence anywhere in the state is sufficient as it is to argue that it is sufficient if they own a freehold interest in land anywhere in the state. Accordingly, we hold that the term "resident freeholders of each school district" means persons residing in the school district who own a freehold interest in land situate therein.[1]

■ The order of consolidation was signed on January 11, 1956. After an appeal had been perfected to the district court from the order and while the appeal was pending, a petition was filed with the county auditor of Chippewa County under § 122.28 for a dissolution of School District No. 10 of Chippewa County and the annexation of the territory therein to Common School District No. 36 of Chippewa County. On April 5, 1956, the county board issued its order dissolving District No. 10 and ordered a hearing to be held on June 6, 1956, for the purpose of determining whether the territory so dissolved should be attached to District No. 36. Thereafter, on petition of certain resident freeholders of District No. 10, the District Court of Chippewa County, on June 1, issued a restraining order and on June 29 a temporary injunction restraining the members of the county board from proceeding with the annexation of the territory of District No. 10 to any other district pending a determination of the appeal from the order of consolidation. Appellants now contend that the dissolution of District No. 10 voided the consolidation.

We have heretofore held that an appeal from an order consolidating school districts suspends the operation of the order pending the appeal.[2] While it may seem anomalous that two school districts

---

[1] See, Damp v. Town of Dane, 29 Wis. 419; State ex rel. Supervisors of Town of Iola v. Nelson, 57 Wis. 147, 15 N. W. 14; Cohn v. Welliver, 84 Neb. 230, 121 N. W. 107; State ex rel. Adams v. City of Kokomo, 108 Ind. 74, 8 N. E. 718; Kirkland v. Board of Public Works of City of Indianapolis, 142 Ind. 123, 41 N. E. 374; 37 C. J. S., p. 1374; 37 Wd. & Phr. (Perm. ed.) p. 436.

[2] In re Consolidation of School Dist. No. 30 v. Consolidated School Dist. No. 30, 151 Minn. 52, 185 N. W. 961; In re Order of Superintendent of Schools, Nobles County, 239 Minn. 233, 58 N. W. (2d) 465; In re

may exist in the same territory at the same time, the suspension of the order during pendency of the appeal is based on public policy in order to prevent confusion and chaos in the administration of school affairs.[3] Pending an appeal, schools must function, and as a practical matter it has been determined that it is better to keep matters in status quo until the appeal has been determined than to permit the newly organized district to take over and perform functions which might become invalid on a determination of the appeal. The situation we have in this case is not unlike the one presented to us in Bricelyn School Dist. v. Board of Co. Commrs. 238 Minn. 53, 55 N. W. (2d) 597, where we held that the county board had no power to form a common school district under §§ 122.05 to 122.08 out of a part of the territory included within an independent school district established under the reorganization act (§§ 122.40 to 122.57) after completion of the reorganization. In a consolidation proceeding, under § 122.21, subd. 4, a favorable vote by the districts maintaining only ungraded elementary schools, voting as a unit, is required. No single district voting unfavorably may defeat the consolidation. It can hardly be supposed that the legislature would have intended that the county board of a county in which one of such districts may be located could defeat the will of the people as expressed by their election when the people themselves in a single district could not defeat the consolidation. It is essential that a single district included in a consolidation continue to function until the consolidated district can take over. In order to prevent confusion, the order of consolidation is suspended during an appeal, but it would be absurd to hold that such suspension gave a county board of a county in which one of several districts is located authority to destroy the consolidation during the period of such suspension. We therefore hold that, pending an appeal from an order of consolidation, the operation of the order is suspended in order to permit the districts included in the consolidation to function until

Dissolution of School Dist. No. 33, 239 Minn. 439, 60 N. W. (2d) 60; In re Certain School Dists. Freeborn County, 246 Minn. 96, 74 N. W. (2d) 410.

[3]In re Consolidation of School Dist. No. 30 v. Consolidated School Dist. No. 30, 151 Minn. 52, 185 N. W. 961.

the consolidated district can take over the management of the school affairs within its territory or until it is determined that the consolidation is invalid, but the status quo of all parties is to be maintained during such appeal. It follows that the county board lacked authority to dissolve District No. 10 during the appeal, and its order attempting to do so is a nullity.

There are other assignments of error dealing largely with the admission or exclusion of evidence. Many of such assignments are simply asserted without any argument or any showing that the court's rulings were in any way prejudicial to appellants. We have examined all of such assignments and are of the opinion that they warrant no discussion. The case was tried by the court without a jury, and much of the evidence excluded was merely corroborative of other evidence in the case. We do not believe that the result would or could have been different if the challenged rulings of the court had been otherwise. Unless there is prejudicial error, there is no reason for a new trial.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.