Earl **FISHER** as Special Conservator, et al., Appellants,

v.

Thomas **SCHEFERS**, et al., Respondents.

No. C1–02–1022.

Court of Appeals of Minnesota.

Feb. 25, 2003.

Gerald W. Von Korff, Pamela A. Steckman, Rinke–Noonan, St. Cloud, MN, for appellants.

Michael O. Burns, St. Cloud, MN, for respondents.

Considered and decided by PETERSON, Presiding Judge, G. BARRY ANDERSON, Judge, and HALBROOKS, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellants' conservator and conservatee challenge the district court's confirmation of conservatee-John Lentner's sale of land to respondents Thomas and Kristine Schefers. Appellants claim the district court erred by finding that Lentner was competent to enter a land-sale contract, that respondents are bona fide transferees for value, and that repeated visits by the Schefers to Lentner while he lived in a retirement home did not constitute undue influence. Because we hold that the district court did not err, we affirm and refuse to set aside the sale of Lentner's farm on the grounds of incompetence, lack of bona fide transferee status, or undue influence.

## FACTS

John Lentner was born on June 13, 1913, and owned the farm adjacent to the property of respondents Thomas and Kristine Schefers. In 1999, he moved off the farm to the Country Manor Nursing Home in Sartell, Minnesota.

In May of 2000, Lentner approached Eugene Brenny and offered to sell Brenny his farm for $50,000 and to include his personal property on the farm, consisting principally of machinery and tools, for an extra $10,000. Brenny, who had known Lentner for a number of years, considered this a fair price for the land and testified that Lentner seemed to be competent to complete the transaction. The transaction was never completed.

It is not entirely clear why Lentner never completed the sale to Brenny. Margaret Lentner, Lentner's sister-in-law, tes-

tified that Lentner felt that appellant Earl Fisher interfered with Lentner's attempted sale to Brenny. She further testified that Lentner stated he would have sold the farm to Brenny were it not for Fisher. Finally, Margaret Lentner testified that John's ability to think was undiminished at the time of the proposed sale to Brenny.

In the fall of 2000, Kristine Schefers telephoned Lentner at his nursing home residence about purchasing Lentner's farm. Because Lentner was hard of hearing, Schefers relayed her interest in purchasing the farm to Margaret Lentner, who was also a resident at the nursing home and happened to be visiting Lentner when Schefers called. Kristine Schefers thereafter visited Lentner at the nursing home on approximately fifteen separate occasions, engaging in small talk and watching him play cards. Although respondents lived near Lentner's farm for more than ten years, Schefers had not previously visited or spoken with Lentner. Schefers testified that Lentner was always alert and that he was capable of playing cards.

In the spring of 2001, Lentner agreed to sell his farm to respondents for $60,000— $50,000 for the real estate and $10,000 for the following personal property: "[r]ound and [s]quare bales of hay. Old combine, elevator, 3 tractors, sprayers and miscellaneous [sic] items." Lentner told respondents that the deed to the farm was in a safe deposit box at the bank and that he needed to pick it up. Kristine Schefers drove Lentner to the bank to get the deed and took Lentner to Bruce Latterell, an abstractor, who drafted the transfer documents. Latterell testified the sale price "was in the ballpark" and Lentner appeared "quite competent" to consummate the sale. Latterell stated that both Lentner and Schefers indicated which items of personal property were included in the sale and that Lentner responded to every question asked. Schefers then delivered a $60,000 check to Lentner who then signed the deed that Latterell had prepared.

Lentner arrived at the $50,000 asking price for the real estate portion of the transaction from the Benton County tax assessor's valuation of his property. In 2000, Lentner received a tax statement in which the assessor estimated his farm's market value at $78,700 and its limited market value at $58,000. Fisher testified that Lentner did not understand the difference between these two figures and that Fisher's attempts to persuade Lentner that the property was actually worth $78,700 were in vain. When asked specifically about the transaction at his deposition, Lentner stated that he used the $58,000 figure as his offer to sell the property to the Schefers. He could not seem to understand why he received the extra $2,000 and, at one point, Lentner thought he should give $2,000 back to the Schefers because they had paid too much. When asked whether he knew what he was doing when he sold the farm, Lentner stated, "[i]t was a good price [at] that time."

When Lentner notified Fisher of the transaction, Fisher talked with respondents and became convinced Lentner lacked the capacity to complete the sale. Soon after, Fisher took Lentner to visit an attorney and an initial complaint seeking rescission of the contract based on incompetence was brought in Lentner's name. On July 2, 2001, Fisher was appointed special conservator over Lentner. On August 20, 2001, Fisher was appointed general conservator over Lentner.

A court-appointed visitor met with Lentner just over two months after the farm sale. In the visitor's August 8, 2001 report, the visitor noted that Lentner did not know that Fisher had filed a conservatorship petition. Lentner also did not know who the attorney they met with was or why he needed a conservator. The report

mentioned Lentner was very confused and was unable to answer simple questions because he would drift off topic.

On August 13, 2001, Dr. John V. Austin, Ph.D. evaluated Lentner and reported Lentner possessed a low intelligence level for his age group. Dr. Austin stated that Lentner might appear that he knows material presented to him when in fact he does not because his pride prevents him from admitting so. The report concluded by stating Lentner lacked the requisite intellectual ability to sell his farm and equipment:

> [Lentner's] deficits at understanding complex or novel tasks as well as his difficulties with abstract thinking prevent him from developing a full understanding of the complexity of what he was doing when he signed the contract to sell his farm.

The court found that Lentner was competent at the time of the farm sale. The district court also found that respondents were bona fide purchasers for value and respondents did not subject Lentner to duress, coercion, or undue influence under Minn.Stat. § 626.5572, subd. 9 (2002). Accordingly, the court refused to set aside the land transaction pursuant to Minn. Stat. § 525.56, subd. 5 (2002), and affirmed the sale as originally executed.

## ISSUES

I. Did the district court err in concluding that John Lentner was competent to sell his farm?

II. Did the district court err in concluding that respondents were bona fide transferees for value?

III. Did the district court err by finding that respondents did not exert undue influence on John Lentner?

## ANALYSIS

We review the evidence here in the light most favorable to the prevailing party and, since the findings of the trial court are entitled to the same weight as a jury's verdict, we will not reverse the district court unless the findings are manifestly contrary to the evidence or clearly erroneous. Minn. R. Civ. P. 52.01; *Krueger v. Zoch,* 285 Minn. 332, 334, 173 N.W.2d 18, 20 (1969). Therefore, we will reverse the district court's findings of fact only if, upon review of all the evidence, we are "left with the definite and firm conviction that a mistake has been made." *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn.1987).

Appellants seek to set aside Lentner's sale of his farm to respondents under Minn.Stat. § 525.56, subd. 5 (2002). This statute allows a conservator to petition the court to review transactions made by the conservatee in the two-year period before establishment of the conservatorship. If the court finds the

> conservatee was incompetent or subject to duress, coercion, or undue influence when the * * * contract was made, the court may declare the * * * contract void except as against a bona fide transferee for value and order reimbursement or other appropriate relief.

Minn.Stat. § 525.56, subd. 5.

## I.

 Appellants argue the district court erroneously found Lentner was competent at the time of the transaction at issue. In Minnesota, there is a presumption of competence. *Jasperson v. Jacobson,* 224 Minn. 76, 82, 27 N.W.2d 788, 792 (1947). Mental competence is measured at the time the party executes the document. *Sullivan v. Joint Indep. Consol. Sch. Dist. No. 102,* 251 Minn. 378, 382, 88 N.W.2d 1, 4–5 (1958).

Mere mental weakness does not incapacitate a person from contracting. It is

sufficient if he has enough mental capacity to understand, to a reasonable extent, the nature and effect of what he is doing.

*Timm v. Schneider*, 203 Minn. 1, 4, 279 N.W. 754, 755 (1938) (quotation omitted).

There is sufficient evidence in the record to sustain the district court's finding that Lentner was competent on the date of the transaction. Latterell, the abstractor who drafted the transfer documents, testified that Lentner appeared "quite competent" on the day of the sale. Latterell testified that Lentner was able to indicate which items of personal property the parties intended to be included in the transaction documents and that Lentner ably responded to all of Latterell's questions. We further note that Latterell's testimony related to Lentner's competency at the actual time of the transaction and not days, weeks, or months thereafter. In contrast, appellants rely on Lentner's deposition testimony to establish incompetence, testimony that was taken months after the transaction at issue here.

The record also supports the district court's finding that Lentner knew the nature and effect of the actions he took with respondents. To complete the transaction, Lentner notified Kristine Schefers that the deed to the farm was at the bank in a safe deposit box. He also went with her to retrieve the deed and visit the abstractor, Latterell. After the sale was completed, Lentner called and informed Fisher that he sold the farm. This evidence is sufficient to support the district court's determination that Lentner understood the nature and effect of what he had done that day. *See State Bank of Cologne v. Schrupp*, 375 N.W.2d 48, 51–52 (Minn.App. 1985) (concluding there was sufficient evidence consistent with appellant's claim of incompetency to raise a question of fact for the jury), *review denied* (Minn. Dec. 13, 1985).

Finally, two days after the sale, on June 2, 2001, Fisher took Lentner to the farm. During that visit, Lentner was able to tell Fisher he sold the property to respondents, where respondents lived, and how much they paid for the property. Although Lentner was confused about whether the $60,000 he received also included payment for some of his personal property, there is no evidence to suggest Lentner's confusion was attributable to incompetence.

Lentner's nursing home also charted his comments about various issues, including his sale of the farm. On June 2, 2001, after Lentner visited the farm with Fisher, the nursing home log states an entry for 5:45 P.M.:

> Reinforced to client to deposit [the $60,000 check] in bank ASAP and that possibly should call family member to take him to bank. Possibly nephew. Laughed and reported that maybe nephew would want the check if he saw it. * * * Did also discuss that felt got taken advantage of when sold farm, that he did not think his farm equipment was supposed to be included in price with farm land but states it was. Noted had his signed statement on note for 5–31–2001 for price of land and farm equipment for $60,000.

This statement establishes Lentner's desire not to inform Fisher of the sale and that Lentner knew he had sold both his real and personal property for $60,000. We conclude that this statement, despite the remark about being taken advantage of, weighs in favor of finding Lentner competent on the day of the transaction because of his overall understanding of the nature of his acts.

In addition, there is ample evidence to suggest Lentner purposely did not involve

Fisher in the sale of his property. Margaret Lentner testified that John told her he wanted to sell the farm and that Fisher had interfered with his attempt to sell to Brenny. After the sale was consummated, Lentner mentioned to Kristine Schefers that Fisher had "hollered" at him for selling the land. Finally, Lentner told Margaret Lentner he was satisfied with the sale to respondents and that he had wanted to sell the farm because he could no longer go there.

Appellants argue Lentner's own statements and the testimony of witnesses Kristine Schefers, Margaret Lentner, and Eugene Brenny should essentially be ignored. Instead, appellants rely on Dr. Austin's opinion that Lentner did not understand the complexity of his actions. Dr. Austin's report, however, relies, in part, on tests that place Lentner in the low range of intelligence for his age group. But there is no evidence in the record establishing that Lentner's intelligence had suddenly declined, and Fisher had not previously claimed Lentner was incompetent or sought to become his conservator. Throughout his entire life, Fisher testified, Lentner may not have grasped ideas as quickly as others, but he could understand complex matters when they were explained to him. There is little evidence here that Lentner could not comprehend the nature of this transaction or that respondents did not fully explain it to him.

Because sufficient evidence exists to establish Lentner had the mental capacity to understand the nature of his acts, we affirm the district court's finding of competency.

## II.

Under Minnesota Statutes section 525.56, subd. 5, if the court finds respondents were bona fide transferees for value, it may not void the farm sale. Respondents are not bona fide transferees for value, even if Lentner was incompetent, if respondents had notice of Lentner's incompetence. *Wood v. Newell,* 149 Minn. 137, 140, 182 N.W. 965, 966 (1921) (holding a contract with a person of unsound mind will not be set aside where it appears that it was entered into in good faith, for fair consideration, and without notice to the other party of facts sufficient to put a prudent person upon inquiry as to such mental incapacity); *In re Guardianship of Dawson,* 502 N.W.2d 65, 67 (Minn.App. 1993), *review denied* (Minn. Aug. 16, 1993).

Appellants argue the district court erred by concluding respondents were bona fide transferees for value and thus protected by Minn.Stat. § 525.56, subd. 5. Appellants claim Kristine Schefers could not have believed that Lentner was competent after visiting him on fifteen occasions at the nursing home. During those visits, appellants contend, Kristine Schefers would have seen Lentner's unkempt appearance, Lentner fail to recognize familiar persons, and his general confusion.

It is undisputed that respondents paid value of $60,000 for Lentner's real and personal property. But appellants did not prove that respondents had knowledge of Lentner's mental weakness, contractual incompetence, or that Lentner did not understand what he was doing. Although appellants allege symptoms that could lead to a conclusion that Lentner was not fully competent, appellants have not proven respondents were aware of such behaviors. In contrast, when Schefers took Lentner to Latterell to draft the transfer documents, Latterell testified that he thought Lentner understood what he was doing. Lentner was competent and responded to every question Latterell asked him. Kristine Schefers also testified that Lentner was always alert and seemed capable. Simply put, appellants have not estab-

lished specific instances that would alert respondents that Lentner was incompetent. Indeed, appellants cannot even establish that Lentner's behavior, arguably giving notice of his incompetence, occurred in respondents' presence. Without evidence indicating that respondents knew, or should have known, Lentner was incompetent, we cannot say the district court erred in concluding respondents were bona fide transferees.

## III.

Appellants also argue that Kristine Schefers' repeated visits to the nursing home and her failure to involve Lentner's other family members in the transaction unduly influenced Lentner.

In order to show undue influence:

> The evidence must go beyond suspicion and conjecture and show, not only that the influence was in fact exerted, but that it was so dominant and controlling of the [person's] mind that, in making the [contract], he ceased to act of his own free volition and became a mere puppet of the wielder of that influence.

*In re Estate of Congdon,* 309 N.W.2d 261, 268 (Minn.1981) (citation omitted) (in the context of will drafting).

The district court found that the evidence presented does not support the conclusion that respondents unduly influenced Lentner to sell his farm. We agree. Although the actions of Kristine Schefers may be unseemly, they do not rise to the level of undue influence. Appellants made no showing of exactly what respondents did that so dominated Lentner that he was a "puppet" acting according to the wishes of Schefers. It was clear that Lentner wanted to sell the farm for at least a year and the price he suggested to respondents was the same as discussed with Eugene Brenny. This consistent sale price does not necessarily establish Lentner's compe-

tency, but certainly is circumstantial evidence that Kristine Schefers did not control Lentner by using undue influence to persuade him to sell the property or to establish an unfair purchase price.

That respondents had the opportunity to unduly influence Lentner is insufficient to prove such an allegation. *See Congdon,* 309 N.W.2d at 268. Appellants can only speculate that the actions of Kristine Schefers' dominated Lentner so entirely that he could not make an independent decision. While there was certainly opportunity and motive for respondents to engage in undue influence in the purchase of Lentner's property, appellants must establish that undue influence actually occurred at the time of the sale. Because the record supports the findings that appellants failed to establish that undue influence was used to dominate Lentner in the sale of his property to respondents, we affirm the district court on this issue.

## DECISION

The district court properly found that John Lentner was sufficiently competent at the time of the sale of his property, that respondents were bona fide transferees for value, and that appellants failed to adequately support its claim for undue influence. Because the record supports the district court's analysis, we conclude that the findings were not clearly erroneous.

**Affirmed.**