ARTHUR SCHMIDT AND OTHERS v. J. F. GOULD.[1]

July 15, 1927.

No. 25,995.

**Grant of and refusal to grant temporary injunction.**

1. The granting of a temporary injunction rests in the discretion
of the trial court and an order refusing such will not, in the absence
of an abuse of discretion, be reversed.

**Act constitutional.**

2. G. S. 1923, § 5630, subd. 6, which authorizes the state game and
fish commissioner to set aside and reserve any of the waters of the
state for the purpose of fish propagation, is constitutional, in that it
does not involve: (1) The delegation of legislative power; (2) arbi-
trary action on the part of the commissioner; nor (3) the taking of
property in violation of the due process clause of the constitution.

[1]Reported in 215 N. W. 215.

Appeal and Error, 4 C. J. p. 803 n. 87.
Constitutional Law, 12 C. J. p. 839 n. 71; p. 840 n. 79, 83; p. 845 n. 56;
. p. 846 n. 76; p. 849 n. 15.
Fish, 26 C. J. p. 625 n. 5; p. 635 n. 6; p. 636 n. 23.
Injunctions, 32 C. J. p. 29 n. 13; p. 31 n. 17; p. 43 n. 9; p. 52 n. 99;
p. 80 n. 18.

Plaintiffs appealed from an order of the district court for Koochiching county, Wright, J., denying their motion for a temporary injunction. Affirmed.

*David Hurlburt,* for appellants.

*Clifford L. Hilton,* Attorney General, and *Chester S. Wilson,* Assistant Attorney General, for respondent.

WILSON, C. J.

Plaintiffs appealed from an order discharging an order to show cause why a temporary injunction should not be issued during the pendency of the action.

The action was instituted to restrain the defendant from enforcing an order made by him pursuant to G. S. 1923, § 5630, to reserve all the waters of Rainy Lake within the confines of the county of Koochiching for fish propagation. Plaintiffs are local commercial fishermen.

1. A temporary injunction will not be granted unless it clearly appears that there is an immediate prospect that plaintiffs would otherwise suffer an irreparable injury. 1 High, Injunctions (4 ed.) § 109; Schurmeier v. St. P. & P. R. Co. 8 Minn. 88 (113), 88 Am. D. 770; Pineo v. Heffelfinger, 29 Minn. 183, 12 N. W. 522; Knoblauch v. City of Minneapolis, 56 Minn. 321, 57 N. W. 928; Stees v. Kranz, 32 Minn. 313, 20 N. W. 241.

Our statute specifies when a temporary injunction may be granted. G. S. 1923, § 9386. The granting thereof rests in the discretion of the court which considers the relative injury and inconvenience which may be likely to result to the parties. In the absence of an abuse of discretion the action of the trial court will be sustained. Potter v. Engler, 130 Minn. 510, 153 N. W. 1088;

Borough of Belle Plaine v. Northern Power Co. 142 Minn. 361, 172 N. W. 217; Neill v. City of Red Wing, 156 Minn. 467, 195 N. W. 145. Especially is this true where the evidence is conflicting and no irreparable injury impends. Neill v. City of Red Wing, 156 Minn. 467, 195 N. W. 145. As said in Minneapolis E. L. Co. v. Federal Holding Co. 161 Minn. 198, 201 N. W. 324: "this court will interfere when the trial court refuses a temporary injunction, only when, in the absence of such relief, an injury will result which the court should prevent. Where the facts are in dispute and the legal rights of the parties are left in doubt, the action of the court in granting temporary injunction for the protection of rights pending the suit will rarely be interfered with on an appeal." We find nothing to indicate an abuse of discretion.

2. Plaintiffs contend, however, that the abuse of discretion is grounded in their claim that the statute under which the commissioner made his order is unconstitutional.

The legislature cannot delegate its authority to make a law. It may, however, authorize a commissioner or departmental head to do things which it might properly, but cannot conveniently or advantageously, do itself. It is not every grant of power, involving the exercise of discretion and judgment that amounts to a delegation of legislative power. State ex rel. R. R. & W. H. Comm. v. C. M. & St. P. Ry. Co. 38 Minn. 281, 299, 37 N. W. 782; Williams v. Evans, 139 Minn. 32, 41, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918F, 542; 12 C. J. 848, § 333. The legislature declared the law and policy of such propagation in conservation of our natural resources. The commissioner is informed as to the requirements and necessary condition for successful spawning beds. This law relates to details concerning a very limited area of waters of the state. Obviously the selection of the waters to be used, which involves technical knowledge, cannot conveniently or advantageously be made by the legislature itself. It is wholly for the public welfare and hence a liberal construction is demanded. Indeed, in our opinion, this statute is justified constitutionally, in this respect, on the ground that the power granted is only a determination of details

in the nature of the administration of the game laws. The commissioner did not make the law. He merely acted as the agent of the legislature in selecting the necessary and appropriate waters for the purpose of carrying out the laws made by the legislature as found in G. S. 1923, c. 32. The legislature can make a law delegating a power to ascertain or determine some fact or state of things upon which the law makes, or intends to make, its own action depend. Union Bridge Co. v. United States, 204 U. S. 364, 383, 27 S. Ct. 367, 51 L. ed. 523. Here the legislature has done no more. This authority is analogous to that given by the legislature to live stock sanitary boards, health boards, the secretary of agriculture relating to transportation of live stock, and various other boards and commissions. Adams v. City of Milwaukee, 144 Wis. 371, 129 N. W. 518, 43 L.R.A.(N.S.) 1066, note; Field v. Clark, 143 U..S. 649, 694, 12 S. Ct. 495, 36 L. ed. 294.

The claim that the commisioner acted arbitrarily cannot be sustained. The record discloses that the department for years has made substantial use of these waters, and particularly of Rat Root river where it empties into Black Bay where the pike are caught in their annual run upstream to spawn. Such fish usually spawn in the rivers tributary to the larger lakes. By placing the spawn taken from the fish in the state hatchery 75 per cent of the eggs are hatched, whereas if the spawn were left to ravages of eelpouts and other rough fish not over ten per cent of the eggs would produce. A female pike produces annually from 50,000 to 400,000 eggs. Twenty-five hundred female fish were taken from these waters in three hauls. To a large extent fish return to the same spawning ground. If the commercial fishermen may take them at will the state's plans are ineffectual and futile because it would eventually exterminate the breeding stock. It is apparent that there is a necessity for a withdrawal of these waters for the purpose of fish propagation.

Plaintiffs own equipment for commercial fishing. They also own land on which they live which adjoins the lake, but they have no privilege or right to engage in commercial fishing by virtue of

being riparian owners. Their property has not been taken nor has there been any violation of the due process clause of the constitution. Bohman v. Gould, 169 Minn. 374, 211 N. W. 577.

Affirmed.