INDEPENDENT SCHOOL DISTRICT NO. 35,
MARSHALL COUNTY, v. CLIFFORD E. ENGELSTAD
AND OTHERS.
INDEPENDENT SCHOOL DISTRICT NO. 440,
MARSHALL COUNTY, AND OTHERS
v. C. L. STAPLETON AND OTHERS.

144 N. W. (2d) 245.

July 1, 1966—Nos. 39,974, 39,975.

---

[3] Kiesow v. Kiesow, 270 Minn. 374, 384, 133 N. W. (2d) 652, 660.

*James E. Knutson, Peter S. Popovich,* and *Peterson & Popovich,* for appellants.

*Douglas W. Cann,* County Attorney, *Alfred C. Schmidt,* Assistant County Attorney, and *Olson & Kief,* for respondents.

NELSON, JUSTICE.

Each of these appeals is from an order denying a motion for a temporary injunction. They arise out of a school district consolidation, are based on substantially the same facts, and were heard together in this court.

On June 2, 1964, the Board of County Commissioners of Marshall County ordered certain lands which were then a part of Independent School District No. 438, Gatzke, Minnesota, to be detached from that district and annexed to Independent School District No. 440. On June 1, 1964, a consolidation plat was filed with the county auditor of Marshall County, purporting to consolidate all of Independent School District No. 35, Grygla, Minnesota; all of Independent School District No. 438; and a part of Independent School District No. 685, Skime, Min-

nesota. On June 26, 1964, the state commissioner of education approved the consolidation plat.

On June 30 District No. 438 appealed from the order of detachment and annexation by the Board of County Commissioners. On July 1 District No. 35 also appealed from the order of detachment and annexation. These appeals are still pending in the district court.

On July 28, 1964, an election was called and held on the question of consolidation in District No. 35, District No. 438, and the part of District No. 685 indicated on the consolidation plat. The results of the election favored consolidation. On July 30, 1964, C. L. Stapleton, the county superintendent of schools for Beltrami County, issued an order pursuant to statute purporting to declare the consolidation effective, the new district thereafter being designated Independent School District No. 447. On August 26, 1964, an appeal was taken from said order of consolidation by District No. 440, Leo Orpen, Peter Aune, Dwayne Nelson, and Independent School District No. 561, Pennington and Marshall Counties.

On September 10, 1964, Orpen, Aune, Nelson, District No. 440, and District No. 561 brought an action against Stapleton to enjoin him from holding a special election to elect a school board for the new District No. 447. On the same day they filed a motion for a temporary injunction and obtained a restraining order to prevent the superintendent from calling an election. Prior to the hearing on the motion, Districts No. 35 and 438 were permitted to intervene in the action.

At the hearing the superintendent and the intervening districts opposed the motion, contending that the complaint failed to state a claim on which relief could be granted and that the court lacked jurisdiction to issue an injunction because plaintiffs' complaint lacked verification and they had furnished no affidavit or sworn statement as to the facts and no bond as required by Minn. St. 585.03. The superintendent and the intervenors also argued that a temporary injunction was an inappropriate and unnecessary remedy.

On March 17, 1965, the court issued an order denying injunctive relief and dissolving the restraining order. Plaintiffs appealed from this order (Appeal No. 39,975).

Thereafter, the respondents in the district court appeal taken by District No. 35 from the order of detachment and annexation made by the county board June 2, 1964, and District No. 440, an intervening respondent in that appeal, moved the district court for a temporary injunction to restrain the county superintendent from holding the election. After a hearing the court denied the motion on April 14, 1965, holding that the earlier order denying a temporary injunction was res judicata. District No. 440, Orpen, Aune, and Nelson appealed from this order (Appeal No. 39,974).

Following the denial of the second motion for a temporary injunction the superintendent called an election to elect new school board members pursuant to Minn. St. 122.23, subd. 18(a). The election was held May 18, 1965.

The order of March 17 denying the first application for a temporary injunction was not accompanied by any explanation of the court's reasons for the denial. The order of April 14 denying the same relief held that the earlier determination was res judicata. Appellants contend that the court in each instance erred in not granting the injunction. They claim also that the holding of the election has caused them irreparable harm and that it should be set aside.

Minn. St. 585.03 requires that sufficient grounds for a temporary injunction must be presented to the court "by affidavit." The complaint accompanying the first motion for a temporary injunction was unverified [1] and no affidavits were placed before the court setting forth the facts which appellants claim required the issuance of a restraining order and the temporary injunction.

A temporary injunction may issue on the complaint alone, if it makes out sufficient cause for it, and if it is verified and its allegations are positive. Verified pleadings may be considered as affidavits tending to prove or disprove the claims of the respective parties. The complaint, answer,

---

[1] In Cramond v. AFL-CIO, 267 Minn. 229, 126 N. W. (2d) 252, we held that in reviewing an order denying a temporary injunction this court is limited to a consideration of only such facts as appear from a verified complaint and affidavits. See, Behrens v. City of Minneapolis, 199 Minn. 363, 271 N. W. 814; Mathwig v. Olson, 190 Minn. 262, 251 N. W. 518.

and reply, as pleadings, determine whether the proceeding is one in which an injunction should issue and if verified they, like other sworn statements, as affidavits and not as pleadings, directly support or oppose the relief asked. Behrens v. City of Minneapolis, 199 Minn. 363, 271 N. W. 814; Stees v. Kranz, 32 Minn. 313, 20 N. W. 241. Here, however, there being no verified pleadings and no affidavits submitted, appellants in Appeal No. 39,975 failed to meet the conditions prescribed by § 585.03 for the issuance of a temporary injunction.

Minn. St. 585.02 prescribes the circumstances authorizing the issuance of a temporary injunction. It will not be granted unless it clearly appears that there is an immediate prospect that plaintiff will otherwise suffer an irreparable injury. Schmidt v. Gould, 172 Minn. 179, 215 N. W. 215. There must be threatened injury which is real, substantial, and irreparable. Williams v. Rolfe, 257 Minn. 237, 101 N. W. (2d) 923. Injunctive relief cannot be given for what is a mere assumption of a possible result, but some irremediable damage must be shown. J. F. Quest Foundry Co. v. International M. & F. W. Union, 216 Minn. 436, 13 N. W. (2d) 32. See, also, Williams v. Klemmer, 177 Minn. 44, 224 N. W. 261; Hart v. Marshall, 4 Minn. 211 (294).

Granting or refusing to grant a temporary injunction rests in the discretion of the trial court to such an extent that appellate courts are not justified in interfering unless the action of the trial court is clearly erroneous and will result in injury which it is the duty of the court to prevent. Hotel & Restaurant Employees' Union v. Tzakis, 227 Minn. 32, 33 N. W. (2d) 859. On appeal from an order denying an application for an injunction the trial court will be deemed to have found all the essential facts against the applicant. Wagner v. Cranmer, 152 Minn. 114, 188 N. W. 65. It is also the rule that an order granting or refusing a temporary injunction neither establishes the law of the case nor constitutes an adjudication of the issues on the merits. Village of Blaine v. Independent School Dist. No. 12, 265 Minn. 9, 121 N. W. (2d) 183.

Scrutinized with these rules in mind, the affidavits submitted in support of the second motion for a temporary injunction do not present sufficient proof that appellants would suffer the injury required for the granting of relief under § 585.02. Appellants argue that the holding of

the election, which took place shortly after the denial of the second application for a temporary injunction, has in fact resulted in a substantial threatened and irreparable harm to them. They argue that the new board has authority to conduct the business of the new district and to enter into contracts, issue warrants, and call for an election on the issuance of bonds and that the individual appellants as landowners in the district would be responsible for the payment of all contracts and liabilities created by the board even if the new district were eventually held to be null and void.

However, we do not find that these consequences follow from the holding of the election. The superintendent called and held the election in compliance with statute. Minn. St. 122.23, subd. 18, provides:

"If no board is provided for under the foregoing provision [Minn. St. 122.23, subd. 17], *upon receipt of the assigned identification number, the county superintendent shall determine a date, not less than 20 nor more than 60 days from the date of the receipt by him of the assigned identification number, upon which date shall be held a special election in the district for the purpose of electing a board of six members * * *.*" (Italics supplied.)

When the superintendent called the election, there was no court order prohibiting him from doing so. There is nothing in § 122.23 which places any time restriction on the election of school board members because an appeal from the order of consolidation has been taken and is pending. No doubt the members of the board and all school officials concerned with the consolidation are cognizant of the rule that an appeal from an order consolidating school districts suspends operation of the order while the appeal is pending. School Dist. No. 30 v. Consol. School Dist. No. 30, 151 Minn. 52, 185 N. W. 961. There is therefore little reason to suspect that the newly elected members would undertake to perform the duties of a school board, or would be urged to do so by any person, until the validity of the consolidation has been finally determined. The election of school board members is simply one of the matters to be followed up in order to complete the consolidation proceedings. The legislature no doubt had that fact in mind and therefore provided that

the superintendent shall determine a date, not less than 20 nor more than 60 days from the date of the receipt by him of the assigned identification number, for the election of the board.

Clearly an appeal from the order for consolidation does not nullify the consolidation, for that is already an accomplished fact and unless it is judicially determined to be invalid there is no further act required to make it complete. In re Appeal of Lego v. Rolfe, 268 Minn. 483, 129 N. W. (2d) 811. Thus the newly consolidated district has all the powers and authority given to it by the legislature, subject to the limitation, based upon public policy and imposed by decisional law, that the status quo must be maintained until the appeal from the order for consolidation is determined. School Dist. No. 30 v. Consol. School Dist. No. 30, *supra*. The purpose of requiring that the status quo be maintained is to prevent the newly consolidated school district from exercising its powers in a manner which might seriously impair the rights of the parties to the appeal should the consolidation be held invalid. Nevertheless, the requirement that the status quo shall be maintained during the pendency of the appeal would not prevent the newly consolidated district from doing acts which would expedite organization of the new district when such acts can be undertaken without jeopardizing the rights of the parties to the appeal.

It is only reasonable to assume that there is a substantial public interest in permitting the conduct of the election of a school board for the new district pursuant to Minn. St. 122.23 in view of the clear and pressing concern of a community with the education of its children. If the consolidation is affirmed, there is a substantial public interest in minimizing the delay caused by the appeal and in getting the new district into operation. Subd. 18(h) of § 122.23 contemplates that the new board shall plan for the operation of the new district and take over its actual management on the first day of the following July. If a board cannot be elected as the statute provides, there is no group charged with planning for the operation of the new district. If a decision on an appeal from an order for consolidation should be made late in June in any year, there would be no time for conduct of an election prior to July 1 of that year and under our statute there would be another year's delay in putting the new dis-

trict into operation. It should also be recognized that in the holding of an election under § 122.23, subd. 18, the county superintendent of schools is only proceeding to complete his routine functions with respect to the new consolidated district and further planning thereafter becomes the responsibility of the newly elected board.

There is nothing in the record before us to indicate that the holding of the school board election has in any way affected the appeals now pending from the consolidation order nor the legal interest of any party adversely. No claim is made that the election was conducted improperly in any respect, and we see no reason for setting it aside. Certainly the election of a school board pursuant to the consolidation statute does not, in and of itself, affect any of the parties' rights. Appellants have made no showing that the newly elected board has improperly assumed to exercise authority before the consolidation has been declared valid, and the mere holding of the election has not caused them injury.

Recent cases have confirmed that the public policy of suspending the operation of consolidation orders pending appeal is based on the desirability, perhaps the necessity, of permitting a district included in the consolidation to function until the new district can take over the management of the territory. Sullivan v. Joint Independent Consol. School Dist. No. 102, 251 Minn. 378, 88 N. W. (2d) 1. There is justification for the policy and the rule that prevents the newly consolidated district from doing acts pending appeal which affect the substantial rights of the old district, and which could not easily be reversed or set aside.

But the mere election of the school board of the new district does not interfere with the operation of the old districts pending determination of an appeal from the order of consolidation, nor does it specially affect the rights of the individual appellants here. The actions necessary to operate schools in the new district could not properly be undertaken by its board until the validity of the consolidation has become an established fact. In fact, however, there has been no claim by appellants that such conduct was ever contemplated. Certainly if the new board members should attempt to perform such actions before final validation, those violating the rule could be enjoined in an action naming them as defendants.

It is clear from the files and the record submitted on these appeals

that the statutory requirements for the issuance of either a restraining order or a temporary injunction were never met due to lack of verification and insufficient proof. Under the circumstances whether or not the order denying the first application for such relief was res judicata becomes unimportant since the circumstances prescribed by Minn. St. 585.02 for the issuance of a temporary injunction were not shown on either application.

Affirmed.

ROGOSHESKE, JUSTICE (concurring specially).

I agree that the record does not support appellants' claim that the trial judges abused discretionary powers in refusing to enjoin the election, as the statutory requirements essential to the exercise of such power were not met.

However, I do not agree with the statements which indicate that the board members are validly elected. The appeal from the superintendent's order of consolidation suspends the order and destroys its force and effect as a basis for any action. In re Appeal of Lego v. Rolfe, 268 Minn. 483, 129 N. W. (2d) 811. Electing board members so that they may plan for the future of the new district during the pendency of the appeal is inconsistent with the right of those opposed to the order of consolidation to have its validity passed upon by the courts. Planning in this context is no different than actual operation in its effect upon the opponents of consolidation. They can hardly be expected to take part in either the election or planning, both of which they regard as illegal acts. To permit an election, and thereby create a constant threat that some binding action may be taken before validation, needlessly aggravates the dispute and invites further litigation. It is difficult for me to conceive of any reason why an election must be held if the new board has no power whatsoever to act. The holding of the election necessarily results in a change in the status quo from what it was at the time the appeal was perfected.

I doubt that it is necessary to pass on the issue of the validity of the election, but if it is, I believe we must declare it to be a nullity unless we intend to deviate from our repeated holdings that the appeal suspends

the order of consolidation, and all matters relating thereto are to remain in status quo until the appeal is finally determined.

THOMAS GALLAGHER, JUSTICE (concurring specially).
I join in the opinion of Mr. Justice Rogosheske.

OTIS, JUSTICE (concurring specially).
I join in the opinion of Mr. Justice Rogosheske.

MR. CHIEF JUSTICE KNUTSON took no part in the consideration or decision of this case.