Lester **KRUEGER**, et al.,
Petitioners, Appellants,

v.

**WASHINGTON FEDERAL SAVINGS BANK OF MONTEVIDEO,**
Respondents.

No. C6–86–1926.

Court of Appeals of Minnesota.

May 26, 1987.

Clyde E. Miller, Hector, for appellants.

David R. Minge, Janice M. Nelson, Montevideo, for respondents.

Considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

This appeal is from the trial court's order denying appellants' motion for a temporary injunction restraining respondent from foreclosing on its mortgage and requiring it to mediate under the Farmer-Lender Mediation Act. We affirm.

## FACTS

In June, 1976, First Federal Savings and Loan loaned appellant North Star Seed Company ("North Star") $250,000. Appellants Lester and Rosemary Krueger (the "Kruegers"), who own North Star, co-signed the loan. First Federal Savings and Loan later merged into respondent Washington Federal Savings Bank of Montevideo ("Washington Federal").

The loan is secured by a mortgage on 90 acres of land owned by appellants, comprising a 10–acre site owned by North Star and an adjacent 80–acre site owned by the Kruegers. In August, 1983, after appellants had failed to make six monthly payments, Washington Federal began foreclosing on the mortgage. Within a week, however, the parties restructured the loan so that the entire amount due would be payable on November 1, 1985.

On February 19, 1985, North Star petitioned for reorganization under the bankruptcy code. The bankruptcy court dismissed North Star's petition in January, 1986, citing the "lack of any reasonable likelihood of rehabilitation [and] the continuing depreciation in value of assets." On February 6, 1986, Washington Federal served appellants a 60–day notice of default and intention to foreclose.

On March 22, 1986, the Farmer-Lender Mediation Act, Minn.Stat. §§ 583.20–.32 (1986) (the "Act"), became effective. The Act gives certain debtors the right to mediate with their creditors before they foreclose mortgages on agricultural property. On April 11, 1986, the Kruegers filed a request for mediation under the Act.

The initial mediation session was held May 7, 1986. Although the Act provides that additional meetings may be held, none were scheduled and on July 16, 1986 the mediator notified the parties that mediation proceedings were closed.

On August 5, 1986, Travelers Insurance Company ("Travelers"), another creditor of appellants, served the Kruegers a mediation notice. The Act requires creditors to serve such notices on qualified debtors before foreclosing on agricultural property. § 583.26, subd. 1. The mediation notice informed the Kruegers that Travelers intended to foreclose on 372 acres of mortgaged farmland, and that they had the right to request mediation.

On August 26, 1986, the Kruegers filed a request for mediation, listing Washington Federal as one of six creditors subject to mediation under the Act. That same day, Washington Federal served appellants a notice of mortgage foreclosure by advertisement, with a scheduled foreclosure sale date of November 18, 1986, and a redemption period of twelve months from date of sale.

Appellants then brought this suit for a declaration that they are entitled to mediation under the Act, and for an injunction restraining foreclosure and directing Washington Federal to mediate. On September 23, 1986, the trial court granted the Kruegers a temporary restraining order staying foreclosure. The next day, appellants moved for a temporary injunction directing Washington Federal to mediate in good faith for 60 days.

On September 30, 1986, after being told by Washington Federal that it had already participated in mediation, the court lifted the temporary restraining order to the extent of allowing the publication of the notice of foreclosure to continue.

A hearing was held on appellants' motion for a temporary injunction and the continuation of the temporary restraining order on October 3, 1986. No oral testimony was taken. Washington Federal subpoenaed the mediator to testify, but the court granted the mediator's (unopposed) motion to quash on grounds of privilege. *See* Minn. Stat. § 583.26, subd. 7(b) (1986).

On October 16, 1986, the trial court issued its order denying appellants' motion and dissolving the temporary restraining order. The court found that neither the Kruegers nor North Star qualified for med-

iation under the Act, and that, while not entitled to it, the Kruegers already had mediation with Washington Federal. Appellants failed to post bond as required by the trial court for a stay pending appeal, and the mortgaged property was sold by sheriff's sale on November 18, 1986.

## ISSUE

Did the trial court abuse its discretion by denying appellants' motion for a temporary injunction?

## ANALYSIS

### I.

■ We initially address Washington Federal's motion to strike. We agree that many factual allegations in appellants' briefs were not presented to the trial court by affidavit or verified pleading, and we therefore will not consider them. *See* Minn.R.Civ.P. 65.02(2); *Independent School District No. 35 v. Englestad,* 274 Minn. 366, 369–70, 144 N.W.2d 245, 248 (1966).

We deny Washington Federal's motion to strike Lester Krueger's second affidavit, dated October 7, 1986. The trial court permitted Lester to submit the affidavit after it denied his request to testify at the hearing. Although it is not in the trial court file, based on appellants' counsel's representation that it was submitted below we will consider it part of the record and direct that it be filed. *See* Minn.R.Civ.App.P. 110.05.

■ Washington Federal's motion to strike "all references to the conduct of mediation and statements between the parties and the mediator" is denied. Assuming that communications made during the mediation process are privileged, the privilege would not apply to the communications described in Lester's affidavits because they merely concern whether there should be mediation. The fact the mediator could not be called to testify, Minn.Stat. § 583.26, subd. 7(b), is not a reason to grant the motion to strike.

### II.

■ A temporary injunction is an extraordinary equitable remedy that pre-

serves the status quo before trial on the merits. *Miller v. Foley*, 317 N.W.2d 710, 712 (Minn.1982). A trial court's ruling on a motion for a temporary injunction is largely an exercise of its discretion, and on appeal the sole issue is whether the trial court clearly abused its discretion. *Eakman v. Brutger*, 285 N.W.2d 95, 97 (Minn. 1979). We must view the alleged facts as favorably as possible to the party who prevailed below. *Integrated Development & Manufacturing Co. v. University of Minnesota*, 363 N.W.2d 845, 847 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. May 24, 1985).

Five factors are considered in deciding a motion for a temporary injunction:

(1) the nature of the relationship between the parties before the dispute giving rise to the request for relief;

(2) the harm to be suffered by the moving party if the preliminary injunction is denied as compared to that inflicted on the non-moving party if the injunction issues pending trial;

(3) the likelihood of success on the merits;

(4) the public interest; and

(5) administrative burdens in enforcing a temporary decree.

*E.g.*, *Edin v. Jostens, Inc.*, 343 N.W.2d 691, 693 (Minn.Ct.App.1984). Only the first three factors merit discussion here.

A. The nature and background of the parties' relationship favors a denial of a temporary injunction. This is not a case of a creditor foreclosing immediately upon default. Appellants have not made any payments on the loan since February, 1983, and Washington Federal has already restructured the loan once.

B. A temporary injunction should be granted only where it is clear the rights of a party will be "irreparably injured" before a trial on the merits is held. *Miller*, 317 N.W.2d at 712. The Kruegers argue in their briefs that they will be irreparably injured because they will lose their "family farm." They never argued below that the mortgaged property contained their family farm, however, even when the trial court specifically asked their attorney at the hearing how foreclosure would cause them

irreparable injury. Appellants did not suggest in their affidavits (or complaint) that they reside on the property or farm it for a livelihood, or even for income.

Washington Federal would be harmed by the delay caused by a temporary injunction. The collateral, which was once appraised at being worth double the outstanding indebtedness is now worth considerably less than the amount owed and is declining in value. Appellants would be unlikely to be able to compensate Washington Federal if temporary relief turns out to have been erroneously granted. The second factor also favors denial of appellants' motion.

C. The Act only applies to a "debtor" who is

(1) a person operating a family farm * * *;

(2) a family farm corporation * * *; or

(3) an authorized farm corporation as defined in section 500.24, subdivision 2.

Minn.Stat. § 583.24, subd. 2(a) (1986). The trial court found that appellants have not shown they are "debtors" under the Act.

Appellants did not allege facts sufficient to show North Star meets the requirements of a "family farm corporation" or an "authorized farm corporation." They do not allege, for example, that North Star was founded for the purpose of "farming," as defined in Minn.Stat. § 500.24, subd. 2(a), or that it meets the revenue requirements of Minn.Stat. § 500.24, subd. 2(d)(4). The trial court found that North Star is not engaged in farming, and this finding is supported by the record.

Whether the Kruegers have shown they qualify as persons "operating a family farm" is a closer question.

"Family farm" means an unincorporated farming unit owned by one or more persons residing on the farm *or actively engaging in farming.*

Minn.Stat. § 500.24, subd. 2(b) (1986) (emphasis added). Although the Kruegers did not allege in their complaint that they were farmers, Lester states in an affidavit that he is the owner of the mortgaged property and "he and his family farm it for their own use."

The trial court apparently disbelieved this averment, finding that "Lester and

Rosemary Krueger are not farmers in that they are owners that lease land and operate a seed business." It is unclear what the basis is for this finding. Although a bank official's affidavit alleges that at the mediation hearing, "Lester Krueger stated that he and his wife were cash renting all of their land," the trial court stated in its decision that it "did not consider any of the proffered information regarding the contents of the mediation session."

The trial court also found, however, that Washington Federal has mediated its claim against the Kruegers, rejecting their argument that Washington Federal had refused to participate in the first mediation proceeding. Appellants may be able to demonstrate at trial that this is untrue and they are entitled to relief under the Act. Viewing the evidence most favorably to Washington Federal, however, they have not made a strong enough showing that they will succeed on the merits to persuade us the trial court clearly abused its discretion.

Appellants' other arguments merit little discussion.

We do not agree that the director of the agricultural extension authority has the exclusive authority to determine a debtor's right to mediation under the Act. Nothing in the Act suggests this.

We will not suspend Washington Federal's remedies for 180 days for failing to mediate in good faith. The Act provide for such a sanction only under specified circumstances not present here. *See* Minn. Stat. § 583.27, subd. 3.

Finally, appellants' argument that Washington Federal violated the Act's stay of foreclosure proceedings was not raised below and will not be considered now.

### DECISION

The trial court's denial of appellants' motion for a temporary injunction was within its discretion.

Affirmed.