*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0637, A14-1215, A14-1525**

Bemidji Township,
Appellant,

vs.

City of Bemidji,
Respondent,

Northern Township,
Respondent.

**Filed May 18, 2015
Affirmed
Hooten, Judge**

Beltrami County District Court
File No. 04-CV-12-2601

John J. Steffenhagen, Hellmuth & Johnson, PLLC, Edina, Minnesota (for appellant)

James J. Thomson, Kennedy & Graven, Chartered, Minneapolis, Minnesota (for respondent City of Bemidji)

Jason J. Kuboushek, Iverson Reuvers Condon, Bloomington, Minnesota (for respondent Northern Township)

        Considered and decided by Stauber, Presiding Judge; Cleary, Chief Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant-township and respondent-city entered into a mediated settlement agreement which, as the result of a binding arbitration proceeding, was determined to be in full force and effect as to essentially all of its provisions and binding upon the parties. In these consolidated appeals, appellant asserts that the district court erred by: (1) confirming the arbitration award on terms other than those in the award; (2) dismissing its pending district court action against respondents; (3) denying its motion to amend its complaint; (4) dissolving a temporary injunction in its favor; (5) enforcing the resulting judgment and ordering injunctive relief for respondent-city; and (6) staying its post-appeal arbitration demand to determine whether appellant's claims were barred by the mediated settlement agreement. We affirm.

## FACTS

The genesis of these proceedings was a number of agreements entered into by appellant Bemidji Township (the Township), respondent City of Bemidji (the City), and respondent Northern Township pursuant to Minn. Stat. § 414.0325, subd. 6 (2014): a November 2004 orderly annexation agreement amended in March 2011 (OAA), and a January 2005 joint powers agreement (JPA) revised in December 2007 (R-JPA). The OAA provided that the City would annex certain properties of both townships and also detach a few City properties to Bemidji Township. As provided for in the OAA, the JPA and R-JPA created the Greater Bemidji Area Joint Planning Board and empowered the board to handle zoning and land use issues for all three entities.

This consolidated appeal by the Township is from three separate orders and judgments issued by the district court arising out of an action filed by the Township against the City in August 2012. In its complaint, the Township alleged that the City had repeatedly breached numerous provisions of the OAA by, in part, improperly annexing properties and failing to provide proper municipal utility services to annexed properties. The Township sought $50,000 in damages and a declaratory judgment that the OAA was unenforceable due to the alleged breaches.

A mediated settlement agreement resolving the suit was approved by the governing bodies of both parties and took effect on June 11, 2013. Among other things, the settlement agreement provided that the OAA and R-JPA would "be amended to release [the] Township as a party," with the caveat that such amendment would be "[s]ubject to the approvals noted below." The settlement agreement further stated that "[a]ny approvals needed by Northern Township to effectuate this Mediated Settlement Agreement must be obtained in order for this agreement to be effectuated." Finally, the mediated settlement agreement provided that "[a]ny dispute(s) and/or questions of any kind or nature regarding this Settlement shall be decided by Binding Arbitration."

However, the board of Northern Township, which at this point was not a party to the breach-of-contract action or the mediated settlement agreement, voted against approving the agreement. The City and the Township disagreed as to what effect Northern Township's lack of approval had on the validity of the settlement agreement. To resolve this dispute, the City demanded arbitration on July 31, 2013, in accordance with the settlement agreement's arbitration clause. During the arbitration process, both

parties also moved the district court for temporary injunctions in the still-pending district court action.

On October 24, 2013, the arbitrator issued his award. The arbitrator found that "[a]ny provision of the [settlement] [a]greement that involves Northern under the [OAA] and [the R-JPA] must have Northern's approval to be enforced." He then found that the settlement term releasing the Township from the OAA and JPA required Northern Township's approval, while the other terms of the settlement agreement between the Township and the City did not. He therefore concluded that the settlement agreement was enforceable and binding upon the Township and the City, but the provision releasing the Township from the OAA and the JPA could not take effect until and unless Northern Township approved. Neither the Township nor the City sought modification of the arbitration award.

The City moved to confirm the arbitration award on November 14, shortly after the district court heard oral argument on the pending cross-motions for injunctive relief on October 30. The district court ruled on the injunction motions on December 3, granting injunctive relief for the Township and enjoining the City from taking any action that affected the planning and zoning authority of the Township. The district court also sua sponte joined Northern Township as an indispensable party to the action. After its joinder, Northern Township filed a notice of removal and a new district court judge was assigned to the case.

While the City's motion to confirm the arbitration award was still pending before the newly-assigned district court judge, the Township moved to amend its complaint.

4

The proposed amended complaint added Northern Township and the joint planning board as parties and now sought declaratory relief and damages for breach of the OAA *and* the R-JPA.

In a March 20, 2014 order and accompanying judgment, the district court concluded that the mediated settlement agreement had fully and finally resolved the lawsuit due to the arbitrator's determination that the settlement agreement was in full force and effect, save for the provision releasing the Township from the OAA and R-JPA. Accordingly, the district court (1) granted the City's motion to confirm the arbitration award; (2) denied the Township's motion to amend its complaint; (3) vacated the temporary injunction; and (4) dismissed with prejudice all claims in the case. The Township appealed from this order and judgment on April 18.

On May 1, the Township demanded further arbitration with the City, seeking a determination as to whether the prior arbitration award adjudicated the merits of the underlying court action and barred its assertion of other claims. On May 14, the City moved the district court to stay this arbitration demand. The City also moved for an order enforcing the March 20 order and judgment, claiming that the Township was refusing to comply with the court order and participate in the joint planning board.

In a June 2, 2014 order, the district court granted the City's motion to enforce the district court's prior order and judgment and ordered the Township to act in compliance with the OAA and the R-JPA. The district court also granted the City's motion to stay arbitration, but noted that this stay was partially dependent on the outcome of the

5

Township's second lawsuit against the same defendants in a separate proceeding.[1] The district court then awarded costs, disbursements, and attorney fees to the City and Northern Township. The Township appealed from this order and also appealed from a later order and judgment confirming the amount of costs, disbursements, and attorney fees awarded to the City and Northern Township. This court consolidated these two appeals with the Township's appeal from the March 20 order and judgment.

## DECISION

The Township raises numerous challenges to the district court's decisions in this case. While it strenuously argues that the district court made a number of procedural errors requiring us to reverse and thus revive this litigation, absent from those arguments is the acknowledgement that the district court's rulings were premised on a mediated settlement agreement between the Township and the City and a binding arbitration award interpreting the mediated settlement. "Settlement of disputes without litigation is highly favored, and such settlements will not be lightly set aside by the courts." *Johnson v. St. Paul Ins. Co.*, 305 N.W.2d 571, 573 (Minn. 1981) (citation omitted). Absent fraud, misrepresentation, or mutual mistake of fact, we uphold settlements between equally-situated parties, even if "a judicial decision should afterwards be made showing that these rights were different from what they supposed them to be, or showing that one of them

---

[1] On March 24, 2014, the Township filed a second lawsuit against the City, Northern Township, and the joint planning board, again alleging violations of the OAA and R-JPA. On October 28, 2014, the district court dismissed nearly all of the claims brought by the Township on the basis that such claims were barred by res judicata and collateral estoppel, or were resolved by the mediated settlement agreement. This order has been separately appealed and, after we denied consolidation with this case, is currently pending before this court.

6

had no rights at all, and so nothing to forego." *N. States Power Co. v. City of Sunfish Lake*, 659 N.W.2d 271, 274 (Minn. App. 2003) (quoting *Johnson*, 305 N.W.2d at 574), *review denied* (Minn. June 25, 2003). Likewise, arbitration is also a proceeding favored in law. *Seagate Tech., LLC v. W. Digital Corp.*, 834 N.W.2d 555, 559 (Minn. App. 2013), *aff'd*, 854 N.W.2d 750 (Minn. 2014). Thus, we evaluate the Township's arguments while remaining cognizant of the "strong public policy interest in the finality of settlements." *Johnson*, 305 N.W.2d at 574.

## I.

The Township makes a number of challenges to the district court's March 20, 2014 order and judgment that resulted in the dismissal of this action. We address each of them in turn.

### A. Confirmation of the Arbitration Award

The district court confirmed the arbitration award in its March 20 order. It correctly noted that it was "compel[led]" to confirm the arbitration award under the Minnesota Uniform Arbitration Act (MUAA), as the statute provides that the district court "shall" confirm an award unless the award is otherwise modified, corrected, or vacated. *See* Minn. Stat. § 572B.22 (2014). The Township made no motion to modify, correct, or vacate the award within the statutory time limits. *See* Minn. Stat. §§ 572B.20(b), .23(b), .24(a) (2014) (providing deadlines for moving the arbitrator or district court for modification, correction, or vacation of an award).

The Township now argues that the district court's March 20 order, along with that order's later enforcement in the June 2 order, "substantially expanded the breadth and

7

terms of the [a]rbitration [award]" in violation of the MUAA. The Township points to language in the MUAA providing that when the district court grants an order confirming an arbitration award, "the court shall enter a judgment in conformity therewith." Minn. Stat. § 572B.25(a) (2014). The Township claims that the district court erred by interpreting and then confirming the award as opposed to returning the award to the arbitrator for modification or correction, citing *Menahga Educ. Ass'n v. Menahga Indep. Sch. Dist. No. 821*, 568 N.W.2d 863, 868–69 (Minn. App. 1997), *review denied* (Minn. Nov. 18, 1997). Specifically, the Township contends that the district court's legal conclusion that the Township continued to be a member of the joint planning board and was bound by the OAA and R-JPA went beyond the scope of the arbitration award that the district court was confirming.

The Township is correct that the arbitration award does not specifically state that the Township remains bound by the OAA and the R-JPA. But, in the award, the arbitrator concludes that the settlement agreement is enforceable and that the Township cannot be released from the OAA and the R-JPA without the approval of Northern Township. That is, the arbitrator deemed the provision in the settlement agreement releasing the Township to have no legal effect without Northern Township's approval, and therefore there is nothing in the settlement agreement that affirmatively *releases* the Township from the OAA or the R-JPA. Under these circumstances, there was nothing for the district court to interpret after the arbitrator concluded that this provision was ineffectual until Northern Township gave its approval. The district court's conclusion that the Township therefore remains bound by the agreements is wholly consistent with

8

the arbitration award's construction of the settlement agreement. Accordingly, the district court's March 20 order requiring the Township to obey the OAA and R-JPA is within the scope of the award.

## B. Dismissal of the Action

In its motion to confirm the arbitration award, the City requested dismissal of the action in accordance with the award and the settlement agreement. The district court agreed, finding that the Township was "obligated to dismiss the [c]omplaint" pursuant to the settlement agreement and the arbitration award's direction that the parties carry out the terms of that agreement. The district court thereby dismissed all claims in the case with prejudice. "We review a district court's dismissal of a claim with prejudice under an abuse of discretion standard." *Minn. Humane Soc'y v. Minn. Federated Humane Societies*, 611 N.W.2d 587, 590 (Minn. App. 2000).

The Township claims that the district court erred by dismissing the action after confirming the arbitration award, and it primarily argues that dismissal is not required by the terms of the arbitration award. This argument misconstrues both the arbitration award and the settlement agreement. The settlement agreement provided:

> Each party's attorney shall promptly file with all courts and agencies having jurisdiction, an executed copy of this [a]greement or otherwise cause all claims, charges and matters to be dismissed or withdrawn with prejudice, and each party shall execute and deliver in addition all other forms of separate written dismissal and withdrawal as may be required.

And, in the following paragraph, each party agreed to a complete release of "any and all claims and causes of action of any kind or nature whatsoever . . . which may exist or

might be claimed to exist, at, prior to or subsequent to the date hereof by reason of any matter or thing arising out of or in connection with the claims in this mediation, and any matter relating thereto." Consistent with these provisions in the agreement, the arbitration award stated that "[b]oth the City and the Township are directed to cooperate and as soon as practica[ble] to carry out all terms of the May 31, 2013 [settlement agreement]." By the clear terms of these documents, the arbitration award contemplated dismissal of the action in accordance with the settlement agreement.

The Township also claims that the City waived any right to dismiss the action by continuing to seek a temporary injunction after the arbitration award was issued. "Minnesota favors arbitration as a means of conflict resolution, but the right to arbitration may be waived." *Fedie v. Mid-Century Ins. Co.*, 631 N.W.2d 815, 819 (Minn. App. 2001), *review denied* (Minn. Oct. 16, 2001). Whether a party has waived its contractual right to arbitration requires evidence that the party intended to relinquish this right and is generally a question of fact subject to clear-error review. *Id.* Caselaw provides that a party who chooses to commence and litigate a lawsuit waives the right to later demand arbitration on the litigated issues. *See, e.g.*, *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 178–80, 84 N.W.2d 593, 601–02 (1957).

But, the record here provides no indication that the City waived arbitration. The City demanded arbitration, both parties participated in arbitration, and a resulting arbitration award was issued. The parties' cross-motions for injunctive relief were filed while arbitration was still pending, and the MUAA explicitly provides that a motion before the district court for provisional remedies that cannot be provided by the arbitrator

10

"does not waive any right of arbitration." Minn. Stat. § 572B.08(c) (2014). Given the unique procedural history of this case, it would be illogical for us to conclude that the City waived its right to enforce an arbitration award via action taken *after* the arbitration process had already run its course.

The Township also argues that, because of Northern Township's failure to approve its release from the OAA and the R-JPA, it received "incomplete . . . consideration" for the settlement and the agreement was therefore unenforceable. However, the plain language of the agreement provides that the release of the Township from the OAA and R-JPA was "[s]ubject to the approvals" of the City, the Township, and Northern Township. The issue of whether Northern Township's failure to approve the Township's release from the OAA and R-JPA would invalidate that provision or any other provision of the agreement for lack of "complete consideration" was an issue for the arbitrator. Because the Township failed to timely challenge the merits of the arbitration award, its arguments are unpersuasive to the extent that it is seeking to relitigate the arbitrator's ruling that this provision was valid and enforceable as written. Even if this provision were unenforceable because of a lack of complete consideration, the severance clause in the agreement provides that, in such case, such result would not affect or impair the remaining provisions of the agreement.

The district court did not err by confirming the arbitration award and enforcing the award by its dismissal of the Township's action against the City and Northern Township.

## C. Denial of the Motion to Amend

The Township argues that the district court erred by refusing to allow it to amend its complaint after the district court granted its motion for a temporary injunction and joined Northern Township as a party. Because the City served its answer well before the Township's motion to amend and did not consent to the amended complaint, the Township could only amend its complaint with leave of the court. *See* Minn. R. Civ. P. 15.01. "The district court should liberally grant motions to amend when justice requires and doing so will not result in prejudice to the adverse party." *Ag Servs. of Am., Inc. v. Schroeder*, 693 N.W.2d 227, 235 (Minn. App. 2005). We will not reverse a district court's denial of a motion to amend "absent a clear abuse of discretion." *Johns v. Harborage I, Ltd.*, 664 N.W.2d 291, 295 (Minn. 2003).

The Township first claims that the district court failed to give a sufficient reason explaining its denial of the motion to amend. The district court briefly explained its rationale in refusing to allow the amendment in the memorandum accompanying its March 20 order:

> Instead of dismissing its complaint as ordered by the [a]rbitrator and requested by the City, the Township has doubled down by attempting to *amend* the [c]omplaint. Because I find that the Township was obligated to dismiss the [c]omplaint as of June 11, 2013, it follows that I cannot revive a case the parties agreed to dismiss by granting the Township's motion to amend the [c]omplaint.

Thus, the district court gave a reason for its refusal to allow the amendment: the district court would not allow the amendment of a complaint that the parties were obligated to dismiss under the settlement agreement. The federal case cited by the Township, *Foman*

12

*v. Davis*, specifically provides that futility of amendment, as well as bad faith and undue prejudice to the opposing party, are reasons to disallow amendment under the federal analogue to rule 15. *See* 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). Minnesota caselaw similarly provides that amendment of a complaint can be denied when it "would serve no legal purpose" or would prejudice the opposing party. *Lumbermen's Underwriting Alliance v. Tifco, Inc.*, 465 N.W.2d 580, 584 (Minn. App. 1991), *review denied* (Minn. Apr. 1, 1991). The parties' settlement agreement required the dismissal of all claims in the instant action, and moreover contained a complete, mutual release from all asserted and unasserted claims. It would defy logic, and the settlement agreement, to have allowed the Township to amend its complaint to add claims when it had already agreed to dismissal of the suit.

The Township next argues that the denial of its motion to amend is "fundamentally irreconcilable" with the district court's earlier decision to add Northern Township as an indispensable party. "An indispensable party is one without whom the action could not proceed in equity and good conscience." *Murray v. Harvey Hansen–Lake Nokomis*, 360 N.W.2d 658, 661 (Minn. App. 1985); *see* Minn. R. Civ. P. 19.01. The first judge assigned to this case added Northern Township when it awarded a temporary injunction in favor of the Township before any of the underlying issues raised by the Township had been resolved by the district court. But, once the district court confirmed the arbitration award, which had declared the settlement agreement to be enforceable, the circumstances had changed. What initially involved unresolved claims by the Township arising out of its settlement agreement with the City became a final

13

resolution of those claims upon the district court's confirmation of the arbitration award. And, since the settlement agreement required the Township to dismiss the action in district court, it necessarily required that the action also be dismissed against Northern Township as well.

The Township's remaining arguments are unpersuasive. It argues that the denial of its motion to amend prejudiced its separate lawsuit by facilitating later res judicata and collateral estoppel defenses. However, "[a] judgment based on a settlement agreement is a final judgment on the merits . . . with respect to those issues and claims actually settled." *Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734, 736 n.1 (Minn. App. 1995), *review denied* (Minn. Sept. 28, 1995). The Township chose to settle this lawsuit—it follows that it should then have to bear any preclusive consequences. The Township also claims that the district court's denial of its motion to amend led to the injunction being dissolved for a lack of remaining claims. But, the Township agreed to settle and dismiss their claims and, as explained below, this necessarily resulted in dissolution of the temporary injunction.

**D. Dissolving the Temporary Injunction**

The Township next argues that the district court abused its discretion by sua sponte dissolving the temporary injunction when the district court dismissed the action. In its March 20 order, the district court vacated the temporary injunction originally granted by the first judge as a "necessary corollary" to its dismissal of the action, reasoning that the injunction would "disappear[]" as a matter of course with the lawsuit's dismissal and would further be "inconsistent" with the arbitration award.

14

"A temporary injunction is an extraordinary remedy," and "[i]ts purpose is to preserve the status quo until adjudication of the case on its merits." *Haley v. Forcelle*, 669 N.W.2d 48, 55 (Minn. App. 2003) (quotations omitted), *review denied* (Minn. Nov. 25, 2003). "The grant of a temporary injunction does not establish the law of the case or constitute an adjudication on the merits." *Id.* "[C]ourts have the inherent power to amend, modify, or vacate an injunction where the circumstances have changed and it is just and equitable to do so." *Channel 10, Inc. v. Indep. Sch. Dist. No. 709, St. Louis Cnty.*, 298 Minn. 306, 327–28, 215 N.W.2d 814, 829 (1974). We review the district court's ruling for an abuse of discretion. *See Krueger v. Wash. Fed. Sav. Bank of Montevideo*, 406 N.W.2d 543, 546 (Minn. App. 1987).

The Township's various arguments regarding the district court's dissolution of the temporary injunction must fail in light of the fact that the district court was dismissing the lawsuit, with prejudice, at the behest of the parties' mediated settlement agreement. The *temporary* injunction could not continue operating after the dismissal with prejudice of the underlying suit. *See Arnoldy v. Nw. State Bank*, 142 Minn. 449, 451, 172 N.W. 699, 699 (1919) ("Necessarily, the injunction would fall when final judgment was entered."). Analogous federal law provides that a temporary injunction necessarily dissolves when the case is dismissed and final judgment is entered. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093 (9th Cir. 2010) (collecting cases); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2947 (3d ed. 2013) ("A preliminary injunction remains in effect until a final judgment is rendered or the complaint is dismissed . . . ."). We conclude that the district court did not abuse its

15

discretion by dissolving the temporary injunction when it dismissed the underlying lawsuit.

## II.

The Township also challenges the district court's June 2, 2014 order and resulting order and judgment awarding attorney fees and costs and disbursements on two grounds.

### A. Enforcement of the March 20 Order and Attorney Fees

After judgment was entered on the March 20 order, the City moved the district court "to order the Township to take no action that is inconsistent" with the March 20 order and judgment, in light of the Township's continued refusal to obey the OAA and R-JPA and to cease conducting its own zoning and planning activities. The resulting order of the district court indicated that it was granting the City's motion for an order "enforcing the March 20, 2014 [o]rder and [f]inal [j]udgment," and further ordered that the Township immediately cease all actions and activities related to its own zoning and planning. The district court also granted the City's motion for costs, disbursements, and attorney fees.

The Township raises two challenges[2] to these district court actions, each of which is ultimately unpersuasive. Building on its prior argument, the Township first argues that this injunctive relief and attorney-fee award further impermissibly expands upon the

---

[2] The Township's reply brief included additional arguments on this issue that were not argued in its principal brief or raised in respondents' briefs. These arguments have therefore been forfeited and will not be considered here. *Wood v. Diamonds Sports Bar & Grill, Inc.*, 654 N.W.2d 704, 707 (Minn. App. 2002) ("If an argument is raised in a reply brief but not raised in an appellant's main brief, and it exceeds the scope of the respondent's brief, it is not properly before this court and may be stricken from the reply brief."), *review denied* (Minn. Feb. 26, 2003).

arbitration award and fatally conflicts with the first judge's earlier temporary injunction in favor of the Township. These arguments are as equally unavailing here as they were regarding the March 20 order. We can reject the Township's request that we reverse the attorney-fee award because the Township's only assertion of error regarding that award is that the district court's "expan[sion]" of the arbitration award rendered the attorney-fee award a "nullity." As addressed *supra*, the March 20 order's legal conclusion that the Township was bound by the OAA and R-JPA was within the scope of the arbitration award, and consequently the June 2 order was also within the scope of the award to the extent that the district court granted relief based on the legal conclusion of its prior order. And, any inconsistency between the June 2 order and the earlier temporary injunction is irrelevant—that injunction was imposed before the arbitration award had been confirmed, and it was finally dissolved by the March 20 order.

The Township also claims that, in enjoining the Township from conducting certain activities, the district court was required to analyze the temporary injunction factors in *Dahlberg Bros., Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321– 22 (1965). Typically, we review a district court's determination on a motion for an injunction for an abuse of discretion, and "[t]he [district] court's failure to make the appropriate findings or conclusions of law constitutes error, requiring reversal and remand." *Oxford Dev., Inc. v. Cnty. of Ramsey*, 417 N.W.2d 319, 321 (Minn. App. 1988). But, we conclude that the district court was not required to address the *Dahlberg Bros.* factors in its determination here. We construe the district court's order as granting permanent, not temporary, injunctive relief, and thus the district court had no reason to

17

consider the temporary injunction factors. Rather, the district court was required to consider the inadequacy of legal remedies and whether the injunction was "necessary to prevent great and irreparable harm." *River Towers Ass'n v. McCarthy*, 482 N.W.2d 800, 805 (Minn. App. 1992), *review denied* (Minn. May 21, 1992). "[I]rreparable harm may be inferred from the breach of a contract between private parties," *id.*, and the only adequate remedy to prevent the harm to the City of the Township's continued refusal to abide by its agreements appears to be the permanent injunctive relief ordered by the district court. Based on this record, the findings of the district court, and the fact that the Township does not challenge the merits of the permanent injunction on appeal, we conclude that the district court did not err by ordering injunctive relief requested by the City.

## B. Stay of Arbitration

Two weeks after filing its appeal from the March 20 order and judgment, the Township demanded additional arbitration with the City on two issues: (1) whether the arbitration award adjudicated the merits of the already-dismissed prior court action; and (2) whether the March 20 order bars claims brought by the Township against the City in the separate lawsuit apart from those asserted by the Township in its initial complaint in this case. The City moved to stay the arbitration demand. The district court granted an arbitration stay in its June 2, 2014 order, but noted that the stay was partially dependent on the outcome of the Township's second, separate lawsuit against the City, Northern Township, and the joint planning board.

18

The Township first argues that the district court lacked jurisdiction to stay arbitration while its order and judgment were on appeal. While an appeal is pending, the "[district] court's authority to make any order that affects the order or judgment appealed from" is suspended. Minn. R. Civ. App. P. 108.01, subd. 2. However, "the [district] court retains jurisdiction as to matters independent of, supplemental to, or collateral to the order or judgment appealed from." *Id.*

We conclude that the district court properly exercised jurisdiction over the City's motion for an arbitration stay, as its ruling on the issue of arbitrability did not affect the March 20 order and judgment on appeal. Caselaw indicates that district courts cannot amend an already-appealed order and judgment. *See, e.g.*, *Gummow v. Gummow*, 356 N.W.2d 426, 428 (Minn. App. 1984) (holding that district court lacked jurisdiction to enter post-appeal order amending judgment and decree). Here, the order staying arbitration did not affect the substance of the underlying order and judgment, as it simply stayed a proceeding that was intrinsically collateral to the order and judgment on appeal. Moreover, the Township's arbitration demand sought an arbitrator's ruling as to the effect of the initial arbitration award, which by extension would affect the order and judgment on appeal. Consequently, the district court would have risked running afoul of rule 108.01 if it had *not* exercised its jurisdiction and stayed arbitration.[3]

---

[3] The Township also contends that the district court's attorney-fee award violates rule 108.01, subd. 2. This argument is unavailing, as caselaw provides that attorney-fee claims are "treated as a matter independent of the merits of the litigation." *Spaeth v. City of Plymouth*, 344 N.W.2d 815, 825 (Minn. 1984).

The Township also contends that the district court improperly applied the MUAA by granting the arbitration stay, in light of the settlement agreement's arbitration clause. The statute provides that:

> On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue. If the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate. If the court finds that there is no enforceable agreement, it may not order the parties to arbitrate.

Minn. Stat. § 572B.07(b) (2014). "In actions to stay arbitration, the limited issue presented to the district court is the existence and scope of the arbitration agreement." *Indep. Sch. Dist. No. 775 v. Holm Bros. Plumbing & Heating, Inc.*, 660 N.W.2d 146, 149 (Minn. App. 2003). "The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate . . . ." Minn. Stat. § 572B.06(b) (2014). We conduct an independent interpretation of the arbitration agreement. *Heyer v. Moldenhauer*, 538 N.W.2d 714, 716 (Minn. App. 1995).

The settlement agreement provides that "[a]ny dispute(s) and/or questions of any kind or nature *regarding this [s]ettlement* shall be decided by [b]inding [a]rbitration." (Emphasis added.) Both of the Township's claims in its arbitration demand fell outside the scope of this arbitration clause. The Township sought to have the arbitrator not only review the merits of its own arbitration award and the district court's March 20 order, but to also issue a "threshold determination" as to the preclusive effects that the March 20 district court order would have in the separate district court action. But, the arbitration clause does not provide that the parties can pursue arbitration in order to relitigate the

20

arbitrator's prior award or the actions of the district court pursuant to that award. Instead, if the Township desired review of either the arbitration award or the March 20 district court order, it had clear avenues to obtain such review: a vacation, modification, or correction motion within the statutory time limit for the arbitration award, and an appeal to this court relative to the district court order. The Township failed to pursue a vacation, modification or correction motion within the statutory time limit, and was already pursuing an appeal of the district court order confirming the arbitration award. As recognized above, the district court correctly recognized that allowing arbitration to proceed would have undermined this court's authority on appeal.

The Township lastly argues that the district court lacked jurisdiction to stay arbitration on the second claim in its arbitration demand, the effect of the arbitration award on the Township's claims in its separate lawsuit, because the current district court judge in this case had been assigned to, and then removed from, the separate lawsuit. The Township argues that the district court ignored the notice of removal and exercised jurisdiction in the separate suit by issuing the stay in this case.

This argument is wholly without merit. The only authority cited by the Township in support of this argument is a case holding that the judge in a prior action can be removed under Minn. R. Civ. P. 63.03 in a subsequent action involving similar parties and claims. *See Omaha Fin. Life Ins. Co. v. Continental Life Underwriters, Ins. Co.*, 427 N.W.2d 290, 291–92 (Minn. App. 1988), *review denied* (Minn. Oct. 26, 1988). There is no indication here that the district court judge refused to honor the Township's removal motion, as he was removed in the separate suit. The district court's order in this case

21

consciously refrains from invading the jurisdiction of the district court in the separate lawsuit. Instead of deciding the arbitrability issue itself, the district court shifted the resolution of arbitrability and other accompanying issues onto the decisionmaker who had the Township's new claims before it in a separate lawsuit.

**Affirmed.**